JOE MARKLEY *v.* DEPARTMENT OF PUBLIC UTILITY
CONTROL ET AL.
(SC 18750)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan and Eveleigh, Js.

Argued March 23—officially released May 24, 2011

*Doug Dubitsky* and *Peter C. Bowman*, for the appellant (plaintiff).

*Mark F. Kohler*, assistant attorney general, with whom was *Robert L. Marconi*, assistant attorney general, for the appellees (defendants).

*Mary J. Healey*, consumer counsel, and *Joseph A. Rosenthal*, principal attorney, filed a brief for the office of consumer counsel as amicus curiae.

*Opinion*

ROGERS, C. J. The plaintiff, Joe Markley, an electric utility ratepayer, appeals from the judgment of the trial court dismissing his action against the defendants, the state department of public utility control (department) and its chairman, Kevin DelGobbo.[1] The plaintiff claims that the trial court improperly concluded that it lacked subject matter jurisdiction over the action because: (1) the plaintiff failed to exhaust his administrative remedies with the department; and (2) his claims are barred by the doctrine of sovereign immunity.[2] Because we agree with the parties' contention that the trial court improperly dismissed the action pursuant to the administrative exhaustion doctrine, the sole issue presently before this court is whether the plaintiff's claims are barred by sovereign immunity. We affirm the judgment of the trial court.

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we granted the defendants' motion to transfer the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[2] Due to the importance of the issues in this appeal, we granted the request of the office of consumer counsel to appear as amicus curiae and to submit a brief in support of the position advocated by the plaintiff.

The plaintiff's action arose from a financing order issued by the defendants pursuant to No. 10-179 of the 2010 Public Acts (P.A. 10-179), requiring that the state's two investor-owned electric power companies, Connecticut Light and Power Company (CL&P) and United Illuminating Company (United) (jointly, distributors), continue to charge their rate paying customers a fee that would otherwise have expired, with the proceeds going to the state's general fund. The plaintiff alleged that the financing order constituted an illegal tax on the distributors' customers, issued in excess of the defendants' statutory authority and in violation of the customers' constitutional rights.

We begin with a brief overview of the relevant statutory scheme. Electric power is distributed to Connecticut customers both by the distributors and by a half dozen nonprofit municipal electric companies (municipal electric utilities) owned and operated by municipalities for the benefit of their residents.[3] The department is primarily responsible for regulating the distributors; General Statutes § 16-6b; whereas municipal commissions perform key regulatory functions such as rate setting for the municipal electric utilities; General Statutes § 7-216; within the parameters set by the legislature. See, e.g., General Statutes § 7-222 (establishing minimum and maximum prices chargeable by municipal electric utilities).

In 1998, the General Assembly passed No. 98-28 of the 1998 Public Acts (P.A. 98-28), which deregulated the state's electric power market. Because deregulation left the distributors with certain "stranded costs," based on past capital investments and contractual obligations, that they would be unable to recoup in a competitive

---

[3] See Office of Legislative Research, Research Report No. 2009-R-0090, "Municipal Electric Utilities" (February 11, 2009), available at http://www.cga.ct.gov/2009/rpt/2009-R-0090.htm (last visited May 12, 2011) (copy contained in the file of this case in the Supreme Court clerk's office).

market, P.A. 98-28, § 10, provided that the distributors could recoup these stranded costs by petitioning the department for the right to impose a "competitive transition assessment" fee (fee), through which their customers would recompense them over time for the stranded costs.[4] Based on the different timetables under which the two distributors implemented their fees, the CL&P fee was slated to expire on December 31, 2010, whereas the fee on United customers does not expire until October 1, 2013. Under P.A. 98-28, customers who were served by municipal electric utilities as of 1998 were not required to pay a fee.[5]

In 2010, faced with a substantial state budget deficit, the General Assembly enacted P.A. 10-179, with the goal of expanding the state's present revenues without increasing the financial burden on individual taxpayers. See 53 H.R. Proc., Pt. 16, 2010 Sess., p. 5576, remarks of Representative Denise Merrill (explaining that P.A. 10-179 eliminates $700 million state budget deficit without raising anyone's taxes or electric bills); Decision and Order, Department of Public Utility Control, "Application of the Connecticut Light and Power Company and the United Illuminating Company for Issuance of Economic Revenue Recovery Bonds Financing Order," Docket No. 10-06-20 (September 29, 2010) p. 5 (P.A. 10-179 "is a product of the financial crisis and the resulting economic downturn which has adversely impacted the [s]tate and its revenues . . . [and] is intended to reflect an underlying policy that electric rates should not increase for customers of the [distributors], and thus generally does not affect [any] customers until respec-

---

[4] Section 11 (c) of P.A. 98-28 also permitted the securitization of the fee, allowing the distributors to recoup their stranded costs at the outset.

[5] Public Act 98-28, § 19 (e), did provide, however, that if a new municipal electric utility were established or an existing municipal electric utility entered the competitive market, any of the distributors' previous customers who transitioned to municipal service would be required to pay the fee that they would otherwise have paid to CL&P or United.

tive stranded cost charges are substantially reduced"). Public Act 10-179, §§ 126 through 134, reconciled these conflicting objectives by amending General Statutes §§ 16-245f through 16-245k and 16-245m to authorize the state to issue "economic recovery revenue bonds" (bonds), proceeds of which will fund a transfer of up to $956 million to the state's general fund. P.A. 10-179, § 125 (19). Principal and interest on the bonds will be financed by continuing to assess a portion of the fee on the distributors' customers past the time when that fee otherwise would have expired. P.A. 10-179, § 126 (b). In addition, the distributors' customers will be assessed a $40 million economic transition charge for direct transfer to the general fund. P.A. 10-179, § 126 (c). In order to implement the bond and economic transition charges (jointly, charges), P.A. 10-179, § 126 (b), required the distributors to apply to the department for a financing order, under which the department would allocate the financial burden "equitably" between the distributors' customers. Accordingly, although P.A. 10-179, § 126 (b), permits the charges to commence at different times for customers of CL&P and United to correspond to the different anticipated expirations of their respective fees, it also requires that the department ensure that "such charges are equitably allocated to the customers of each . . . distribut[or] . . . ." Specifically, P.A. 10-179, § 126 (b), mandates that "the charges on a kilowatt hour basis assessed to the customers of the respective distribut[ors] have substantially the same present value . . . ."

Turning to the present case, the record reveals the following undisputed facts and procedural history. On September 29, 2010, the department issued a financing order (order) pursuant to P.A. 10-179. The order provides, inter alia, that: (1) CL&P customers will shoulder the entire burden of the $40 million economic transition charge, to be paid between January 1 and June 30, 2011,

and will then begin paying the bond charges on July 1, 2011; (2) United customers will begin paying the bond charges on October 1, 2013, when their fees are slated substantially to expire; (3) the allocation of the charges between customers of the distributors will be adjusted over time, with the goal that each will have paid approximately the same charge on a kilowatt hour basis by the end of 2016; and (4) the bond charges will expire at the end of 2018, leaving a two year "true-up" period— 2017 and 2018—during which the department may further tweak the bond rate schedule to ensure that the customers of each distributor pay their equitable share of the charges over the life of the program. The order further provides that the distributors may collect a service fee to recoup their costs for calculating, billing and collecting the charges.

The plaintiff, who alleges that he is subject to the fee and is proceeding pro se,[6] filed an action to enjoin the defendants from enforcing the order.[7] In his initial complaint, the plaintiff alleged that the defendants exceeded their statutory authority in issuing the order, because the charges are, in effect, a tax, and, he further alleged, the department lacks the authority to impose taxes under its enabling statutes. See General Statutes, tit. 16. The defendants filed a motion to dismiss, maintaining that the court lacked subject matter jurisdiction because, inter alia, the plaintiff's claims were barred by the defendants' sovereign immunity. In response,

---

[6] Although the plaintiff represented himself at trial, he was assisted by counsel on his appellate brief and counsel argued the matter on his behalf before this court.

[7] The plaintiff initially sought a temporary injunction prohibiting the defendants from enforcing the order, as well as an order "in the nature of mandamus" requiring that the defendants revoke the order. Although the trial court questioned whether mandamus was the proper instrument for achieving the plaintiff's desired end, the parties have not pressed this point on appeal. In any event, the precise nature of the remedy sought is not material to the resolution of the present appeal.

the plaintiff submitted an amended complaint, the third and fourth counts of which were new claims that the defendants, in implementing the order, violated his right to equal protection of the law. The plaintiff also filed an objection to the defendants' motion to dismiss in which he argued that his action was not barred by sovereign immunity because he was seeking injunctive relief based on allegations that the defendants had acted unconstitutionally and in excess of their statutory authority.

In response to the plaintiff's amended complaint, the defendants filed a motion to strike, in which they restated the sovereign immunity defense and averred that the plaintiff's statutory and constitutional claims both fail as a matter of law. Rather than take up the new issues presented by the defendants' motion to strike, however, the trial court granted the defendants' initial motion to dismiss.[8] In its memorandum of decision, the court, sua sponte, determined that it lacked subject matter jurisdiction over the action because the plaintiff had failed to exhaust his administrative remedies. Specifically, the court noted that the plaintiff had not yet obtained a final decision from the department pursuant to General Statutes § 4-176 (a), which permits any person to seek a declaratory ruling as to the validity of a regulation from the issuing agency. The court further concluded that the futility exception to the administrative exhaustion requirement did not apply, because the

[8] Although the defendants' motion to dismiss technically applied only to the plaintiff's initial, two count complaint, the trial court dismissed the entire action when it granted the motion. At the December 20, 2010 hearing, the court notified the parties that, because the issues of exhaustion and sovereign immunity are subject matter jurisdictional, the court would proceed as if the motion to dismiss covered the amended, four count complaint. In its memorandum of decision, the court also made clear that its conclusion that the plaintiff had failed to exhaust his administrative remedies and to overcome the sovereign immunity defense applied to the amended complaint.

record contained no evidence that the department "would be unable or unlikely to provide the relief sought" by the plaintiff.

After concluding that the plaintiff's claims were barred by the exhaustion requirement, the trial court considered the defendants' sovereign immunity defense as a potential alternate ground for dismissal. The court concluded that it was "unlikely" that the plaintiff could survive a motion to dismiss based on sovereign immunity.[9] This appeal followed. Additional facts will be set forth as necessary.

The sole issue before this court is whether the plaintiff's claims are barred by sovereign immunity.[10] We hold that they are and, accordingly, affirm the trial court's judgment of dismissal.

As a preliminary matter, we set forth the standard of review. "Sovereign immunity relates to a court's subject matter jurisdiction over a case, and therefore presents

---

[9] Although the trial court's discussion of the sovereign immunity defense might have been more definitive, the memorandum of decision makes clear that the court considered the defense to be meritorious. Moreover, both parties have briefed and argued the issue on appeal. In any event, because "[t]he doctrine of sovereign immunity implicates subject matter jurisdiction"; (internal quotation marks omitted) *Bacon Construction Co.* v. *Dept. of Public Works*, 294 Conn. 695, 706, 987 A.2d 348 (2010); the issue is properly before this court; *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 4, 675 A.2d 845 (1996); and, accordingly, we must address it.

[10] With regard to the trial court's conclusion that it lacked jurisdiction because the plaintiff had failed to exhaust his administrative remedies, the plaintiff argues on appeal that pursuing remedies with the department would have been futile because P.A. 10-179, § 129 (b) (1), makes the order irrevocable. In their brief, the defendants reply that pursuing a remedy with the department might nevertheless have been appropriate because the agency could have developed a factual record for later use by a reviewing court. At oral argument before this court, however, the defendants conceded that exhaustion was not a proper basis for dismissing the plaintiff's claims. We agree. Because we conclude that the plaintiff's claims are barred by the doctrine of sovereign immunity, and, therefore, that the trial court lacked subject matter jurisdiction, we need not analyze this issue further.

a question of law over which we exercise de novo review. . . . In so doing, we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Gold* v. *Rowland*, 296 Conn. 186, 211, 994 A.2d 106 (2010). When, as here, the "court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light." (Internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 347, 977 A.2d 636 (2009).

"The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law." (Internal quotation marks omitted.) Id., 349. "[T]he practical and logical basis of the doctrine [of sovereign immunity] is today recognized to rest . . . on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds, and property." (Internal quotation marks omitted.) *Gold* v. *Rowland*, supra, 296 Conn. 212. "Not only have we recognized the state's immunity as an entity, but [w]e have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. . . . Exceptions to this doctrine are few and narrowly construed under our jurisprudence." (Internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, supra, 293 Conn. 349.

In *Columbia Air Services, Inc.*, we recognized three exceptions to the state's general immunity to suit by its citizens, two of which are relevant to the present

case: "(2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights . . . and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." (Citation omitted; internal quotation marks omitted.) Id. Although in reviewing a motion to dismiss we must construe the allegations of the complaint in the light most favorable to the plaintiff, to survive the defense of sovereign immunity the complaint must nevertheless allege sufficient facts to support a finding of unconstitutional or extrastatutory state action. See *Gold* v. *Rowland*, supra, 296 Conn. 200–201. "In the absence of a proper factual basis in the complaint to support the applicability of these exceptions, the granting of a motion to dismiss on sovereign immunity grounds is proper." (Internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, supra, 293 Conn. 350.[11]

## I

## CONSTITUTIONAL CLAIMS

We first consider the plaintiff's claim that his action is not barred by the doctrine of sovereign immunity

---

[11] In its memorandum of decision, the trial court, citing *Pamela B.* v. *Ment*, 244 Conn. 296, 328, 709 A.2d 1089 (1998), indicated that, even if the plaintiff succeeded in establishing that the defendants had acted illegally, the defendants would remain immune from suit unless the injunctive relief sought by the plaintiff could be crafted so as to minimize interference with government functions. We agree with the plaintiff, however, that our more recent sovereign immunity cases have dispensed with the "undue interference" requirement. See, e.g., *Gold* v. *Rowland*, supra, 296 Conn. 212–13 ("In those cases in which it is alleged that the defendant officer is proceeding under an unconstitutional statute or in excess of his statutory authority, the interest in the protection of the plaintiff's right to be free from the consequences of such action outweighs the interest served by the sovereign immunity doctrine. Moreover, the government cannot justifiably claim interference with its functions when the acts complained of are unconstitutional or unauthorized by statute." [Internal quotation marks omitted.]).

because the order denied him equal protection of the law in violation of the constitution of Connecticut.[12] We conclude that the plaintiff has not set forth a substantial claim that the order violated his right to equal protection, and, accordingly, that the constitutional sovereign immunity exception does not apply.

"[T]he second exception permits a plaintiff to bring an action for declaratory or injunctive relief based on

[12] The present status of the plaintiff's constitutional claims is somewhat murky. Although the plaintiff contends in his reply brief that he has "consistently challenged P.A. 10-179 as . . . unconstitutional, both at the trial level and on appeal," a review of the record fails to bear out that contention.

The plaintiff's original complaint did not contain any constitutional claims. Although he subsequently amended his complaint to allege that the order denied him equal protection of the law, the amended complaint refers only to the financing order, and the plaintiff initially disclaimed any facial challenge to P.A. 10-179. In a December 10, 2010 supplemental memorandum to the trial court intended to clarify the nature of his complaint, he clearly states: "Nowhere in the plaintiff's amended complaint does the plaintiff mention P.A. 10-179 . . . . The plaintiff is not seeking an order as to the constitutionality of P.A. 10-179 . . . . The plaintiff is not seeking a determination of constitutionality . . . ." The plaintiff appeared to retreat from this position at the trial court's December 20, 2010 hearing, suggesting that "I would not abandon the constitutional [challenge to P.A. 10-179] . . . [e]ven if I've appeared to have abandoned [it] in that . . . memorandum." Nevertheless, the plaintiff's brief to this court is devoid of any reference to the constitutionality of P.A. 10-179 as a potential basis for overcoming sovereign immunity. At oral argument before this court, the plaintiff's counsel again disclaimed a facial equal protection challenge, and also appeared to disclaim any equal protection challenge to the order as applied to the plaintiff. Nevertheless, because the plaintiff did plead two equal protection counts in his amended complaint, and because the plaintiff's counsel engaged this court in a discussion of the equal protection issue at oral argument, we will assume, arguendo, that the equal protection claim is not abandoned.

At oral argument, and in his reply brief, the plaintiff did purport to adopt various facial constitutional challenges raised for the first time on appeal by the amicus, the office of consumer counsel. In its brief, the amicus challenges the constitutionality of P.A. 10-179, § 126, on the grounds that it represents "an impermissibly broad delegation of legislative power" to the department and is "impermissibly vague." Because the parties themselves have neither raised nor briefed these distinct constitutional questions, we decline to consider them. See *Fisher* v. *Big Y Foods, Inc.*, 298 Conn. 414, 416 n.3, 3 A.3d 919 (2010).

a *substantial* claim that the state or one of its officers has violated the plaintiff's constitutional rights. . . . In order to sufficiently raise such a claim, the allegations of the complaint and the facts in issue must *clearly demonstrate* an incursion upon constitutionally protected interests." (Citation omitted; emphasis added; internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation,* supra, 293 Conn. 358, quoting *Barde* v. *Board of Trustees,* 207 Conn. 59, 64, 539 A.2d 1000 (1988). Reading the complaint in the light most favorable to the plaintiff, we conclude that he has failed to demonstrate that the order violated his equal protection rights.

Article first, § 20, of the constitution of Connecticut, as amended by articles five and twenty-one of the amendments, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability." As a general matter, "this court has interpreted the state constitution's equal protection clause to 'have a like meaning and [to] impose similar constitutional limitations' as the federal equal protection clause." *Batte-Holmgren* v. *Commissioner of Public Health,* 281 Conn. 277, 294 n.9, 914 A.2d 996 (2007); see also *Miller* v. *Heffernan,* 173 Conn. 506, 509–10, 378 A.2d 572 (1977) (conflating state and federal equal protection clauses for purposes of challenge to taxation scheme), appeal dismissed, 434 U.S. 1057, 98 S. Ct. 1226, 55 L. Ed. 2d 758 (1978).

"To prevail on an equal protection claim, a plaintiff first must establish that the state is affording different treatment to similarly situated groups of individuals." *Keane* v. *Fischetti,* 300 Conn. 395, 403, 13 A.3d 1089 (2011). In his amended complaint, the plaintiff alleges that the order arbitrarily "taxes" ratepayers served by

the distributors, but not residents of the towns within the six municipal electric utility districts.[13] In his reply brief, and at oral argument before this court, the plaintiff also alleged that the order distributes the tax burden inequitably between the distributor's customers. Accordingly, he now appears to be positing three similarly situated classes: United customers, CL&P customers, and municipal electric utility customers. For the purposes of our equal protection analysis, we assume, without deciding, both that the question of the relative treatment of United and CL&P customers is properly before the court, and that the three putative classes are in fact similarly situated as to their taxpayer status. See id. ("this court previously has assumed, in conducting equal protection analysis of challenged statute, that groups of persons are similarly situated"), citing *Batte-Holmgren* v. *Commissioner of Public Health*, supra, 281 Conn. 295–96; *State* v. *Wright*, 246 Conn. 132, 143, 716 A.2d 870 (1998) (same).

"Legislative classifications that are not drawn along suspect lines and that do not burden fundamental rights are reviewed under the deferential rational basis standard. . . . Under rational basis review, the [e]qual [p]rotection [c]lause is satisfied [as] long as there is a plausible policy reason for the classification . . . the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker . . . and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational . . . . Further, [equal protection] does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time

[13] We assume, without deciding, that the plaintiff is correct that the charges, which originated as fees intended to recover stranded utility costs, transformed into taxes when the order diverted the proceeds into the state's general fund.

the purpose or rationale supporting its classification. . . . [I]t is irrelevant whether the conceivable basis for the challenged distinction actually motivated the legislature. . . . To succeed, the party challenging the legislation must negative every conceivable basis which might support it . . . ." (Citations omitted; internal quotation marks omitted.) *Keane* v. *Fischetti*, supra, 300 Conn. 406.

It is undisputed that the constitutionality of the taxation scheme at issue in this case must be analyzed under rational basis review because it neither implicates a fundamental right, nor affects a suspect class. Indeed, claims that taxation schemes violate the equal protection rights of those more heavily taxed are subject to an especially deferential rational basis review. The United States Supreme Court has explained that "in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this [c]ourt cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes." (Internal quotation marks omitted.) *San Antonio Independent School District* v. *Rodriguez*, 411 U.S. 1, 41, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973). Accordingly, that court "has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation." *Carmichael* v. *Southern Coal & Coke Co.*, 301 U.S. 495, 509, 57 S. Ct. 868, 81 L. Ed. 1245 (1937). Furthermore, a legislature is "not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it." Id.

Similarly, this court consistently has held that the state does not violate the equal protection clause by singling out a particular class for taxation or exemption. *United Illuminating Co.* v. *New Haven,* 179 Conn. 627, 640, 427 A.2d 830, appeal dismissed, 449 U.S. 801, 101 S. Ct. 45, 66 L. Ed. 2d 5 (1980); see also *Stafford Higgins Industries, Inc.* v. *Norwalk,* 245 Conn. 551, 570–71, 715 A.2d 46 (1998) (unequal distribution of tax burden is permissible so long as tax is adopted despite, and not because of, any adverse impact on more heavily taxed classes).

In the present case, there is no indication, and the plaintiff does not allege, that the higher tax burden the order allegedly imposes on CL&P ratepayers reflects any animus toward that class on the part of the department or the legislature. Rather, the plaintiff argues simply that: (1) the charges arbitrarily apply to the distributor's customers but not to municipal ratepayers; and (2) the order inequitably distributes the burden between the CL&P and United customers. Those allegations are insufficient, as a matter of law, to establish a violation of the plaintiff's equal protection rights. As discussed previously, it is also clear that the legislature had a rational basis for structuring the bond program as it did, namely, to distribute broadly the burden of deficit reduction while ensuring that no ratepayers would be forced to pay more each month than the fee they had already been paying. The antecedent question of whether to tie deficit reduction to taxpayer's electricity purchases is a policy issue that rests with the legislature and lies beyond the purview of this court.

Accordingly, we conclude that, to the extent that the plaintiff has preserved his equal protection challenges, he has failed to demonstrate a sufficient likelihood of succeeding on those claims to overcome the defen-

dants' sovereign immunity. See *Gold* v. *Rowland*, supra, 296 Conn. 200–201.

II

STATUTORY CLAIMS

We next consider the plaintiff's claim that the third exception to the doctrine of sovereign immunity applies because the department lacked the statutory authority to issue the order. We conclude that the plaintiff has failed to set forth a substantial allegation of illegal conduct by the defendants, and, accordingly, that his statutory claims are barred.

"For a claim under the third exception [to the doctrine of sovereign immunity], the plaintiffs must do more than allege that the defendants' conduct was in excess of their statutory authority; they also must allege or otherwise establish facts that reasonably support those allegations." (Internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, supra, 293 Conn. 350. The plaintiff's statutory claims, like his constitutional claims, have evolved over the course of this litigation. In counts one and two of his amended complaint, he alleged that the defendants, in implementing the order, exceeded the authority bestowed upon them by the department's enabling statutes, particularly § 16-6b. His original argument appears to have been that § 16-6b restricts the department to the regulation of public utilities and, accordingly, implicitly precludes the department from levying "taxes" such as the charges.[14] The plaintiff took this same position

---

[14] Paragraph 25 of the plaintiff's amended complaint summarizes his original statutory claim: "The law imposes a duty, under [§] 16-6b, that the defendant[s] cannot implement a tax or [fee] that does not directly relate to the cost of public utilities."

throughout the trial proceedings,[15] and in his initial brief to this court.[16]

As the defendants repeatedly have explained, however, the plaintiff's original statutory claim ignored the fact that P.A. 10-179 itself provides the statutory authority for the defendants to issue the order. See P.A. 10-179, §§ 126 through 134, now codified at General Statutes §§ 16-245f through 16-245k and 16-245m. Even if there were a prima facie conflict between P.A. 10-179 and § 16-6b, P.A. 10-179, as the more specific legislative pronouncement, would take precedence. See *Longley* v. *State Employees Retirement Commission*, 284 Conn. 149, 177, 931 A.2d 890 (2007) ("[w]hen general and specific statutes conflict they should be harmoniously construed so the more specific statute controls" [internal quotation marks omitted]). Recognizing this, the plaintiff wisely conceded at oral argument before this court that the order itself, and much of its content, is properly authorized by statute. Accordingly, his original statu-

[15] The plaintiff's December 10, 2010 supplemental memorandum provides: "Despite the statutory limitations of the powers of the [department], the [department] issued a financing order . . . [which] is the action that the plaintiff seeks to overturn . . . . The [department] is limited to dealing directly with issues involving the regulation of public utilities . . . . It is not a taxing authority." (Internal quotation marks omitted.) At the December 20, 2010 hearing on the defendants' motion to dismiss, the plaintiff argued that: (1) the legislature could not give the department the power to impose taxes without first amending § 16-6b; (2) if the legislature had intended to give the department the power to tax it would have amended § 16-6b; and (3) § 16-6b is in conflict with P.A. 10-179.

[16] The only direct reference in the plaintiff's brief to the claim that the defendants acted in excess of their statutory authority is on page 15, where the plaintiff cites without elaboration to paragraphs 32, 33 and 37 through 40 of his amended complaint. Although three counts of the complaint contain paragraphs numbered 32 and 33, only the fourth count of the complaint contains paragraphs 37 through 40. Accordingly, we assume that the reference in the brief is to the fourth count. Paragraphs 32 and 33 of that count allege that the plaintiff, unlike residents of municipal electric utility districts, will have to pay the charges. Paragraphs 37 through 40 allege that DelGobbo exceeded his statutory authority through his actions as chairman of the department while it converted the charges into a tax on ratepayers.

tory claims are barred by the doctrine of sovereign immunity.

In his reply brief, however, the plaintiff offers two new arguments as to how the defendants have exceeded their statutory authority. First, he alleges that even if the order itself is legal, it illegally allows the distributors to collect a service fee in exchange for calculating, billing and collecting the charges. Second, he alleges that the defendants have somehow failed to comply with the statutory mandate that they impose the charges "equitably" on the state's electrical ratepayers.[17] P.A. 10-179, § 126 (b).

We have often noted that "it is improper to raise a new argument in a reply brief, because doing so deprives the opposing party of the opportunity to respond in writing." *Driscoll* v. *General Nutrition Corp.*, 252 Conn. 215, 226–27, 752 A.2d 1069 (2000). Accordingly, we generally have declined to consider such arguments, deeming them abandoned. See, e.g., *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 59, 12 A.3d 885 (2011).

Perhaps anticipating that outcome, the plaintiff contends in his reply brief that we should nevertheless entertain his new statutory challenges because: (1) the plaintiff represented himself at the trial court; and (2) the new statutory challenges were in fact raised at trial, albeit "not artfully . . . ." We are not persuaded.

As to the first claim, "[w]e are mindful that we should be solicitous to pro se petitioners and construe their pleadings liberally in light of the limited legal knowledge they possess. . . . We are also mindful, however, that the right of self-representation provides no attendant license not to comply with the relevant rules of proce-

---

[17] At oral argument before this court, the plaintiff confirmed that his claim that the defendants have exceeded their statutory authority is now limited to these two theories.

dural and substantive law. . . . The principle that a plaintiff may rely only upon what he has alleged is basic." (Citations omitted; internal quotation marks omitted.) *Kaddah* v. *Commissioner of Correction*, 299 Conn. 129, 140, 7 A.3d 911 (2010). "Additionally, we emphasize that our liberal policy toward pro se parties is severely curtailed in cases where it interferes with the rights of other parties." *Rosato* v. *Rosato*, 53 Conn. App. 387, 390, 731 A.2d 323 (1999). Here, the plaintiff's appeal for latitude is especially unavailing, since he was represented by counsel on his brief to this court. His attorneys had the opportunity to clarify his position at that point, so that the defendants could be apprised of and respond to his claims in their brief. In order to administer justice fairly, this court cannot allow pro se litigants, or their attorneys, continually to try on new claims throughout the appellate process in the hope of finding one that fits.

The plaintiff also argues that these are not new claims, and are properly before this court. As to the service fees, he refers us to two brief statements—at trial and at a department hearing—in which a would-be intervenor in this action, Paula Panzarella, referred to the service fees.[18] Even if we were to impute her statements to the plaintiff, however, in neither case were her complaints about the service fees remotely akin to the specific objections revealed in the plaintiff's reply brief: (1) that service fees are allegedly barred by § 16-245j (c) (4) (B), as amended by P.A. 10-179, § 31 (c) (4) (B); and (2) that the department itself allegedly acknowledged the extrastatutory nature of the service fees in the order. Rather, Panzarella merely maintained that the public is unaware of any service fees. At best, she implied that the service fees, like the disputed charges, represent taxes and hence may not be imposed

[18] Because the action was dismissed, the trial court marked off as moot Panzarella's motion to intervene. She was, however, given the opportunity to testify at the plaintiff's hearing.

by the department. Those statements failed to provide the defendants with notice of the plaintiff's ultimate stance that, although P.A. 10-179 itself is legal, as are many of the charges that it imposes, it bars the department from compensating the distributors for collecting those charges.

As to the equitable claim, the plaintiff indicates in his reply brief that this claim was raised, however inartfully, by the third and fourth counts of his amended complaint, which purported to challenge the constitutionality of the order on equal protection grounds. At oral argument before this court, however, the plaintiff's counsel again changed gears, indicating for the first time that the equitable claim is a challenge to the statutory authority, rather than the constitutionality, of the order, and that it therefore falls under the auspices of the plaintiff's original first and second counts. As discussed previously, however, the plaintiff's arguments before the trial court focused exclusively on his claims that the department is barred by its enabling statute from imposing taxes, and that imposing taxes only on certain ratepayers violates his right to equal protection. Nowhere did he allege that while the charges themselves are legal, the defendants somehow misallocated them between the customers of CL&P, United and the municipal electric utilities.[19]

In the absence of a substantial claim that the defendants have exceeded their statutory authority, the action is barred by the doctrine of sovereign immunity, and, therefore, the trial court properly dismissed the action for lack of subject matter jurisdiction.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[19] The plaintiff's conclusory argument—that the defendants have failed to satisfy the statutory mandate that they structure the charges so that by 2018, customers served by the distributors will have paid essentially the same amount per kilowatt hour on a time-adjusted basis—is not supported by any facts or allegations and appears premature.