SHARON SURRELLS *v.* STEVEN A. BELINKIE ET AL.
(AC 26276)

Bishop, Gruendel and West, Js.

Argued February 21—officially released June 6, 2006

*Keith Yagaloff,* for the appellant (plaintiff).

*Wayne G. Tillinghast,* with whom was *Jeffrey F. Buebendorf,* for the appellee (named defendant).

*Opinion*

WEST, J. In this medical malpractice action, the plaintiff, Sharon Surrells, appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the defendants, Steven A. Belinkie, a plastic surgeon, and Saint Francis Hospital and Medical Center in Hartford. On appeal, the plaintiff claims that the court (1) made clearly erroneous factual findings and (2) improperly failed to draw an adverse inference against Belinkie on the basis of spoliation of evidence. We affirm the judgment of the trial court.

On May 24, 2000, Belinkie performed surgery on the plaintiff's breasts. Belinkie examined the surgical wounds the following day and observed that they were healing properly. Three days later, the plaintiff notified Belinkie that her right breast was swollen and leaking fluid around the areola. Belinkie recognized that the buildup of fluid in the right breast caused insufficient blood flow, a condition known as ischemia, to the areola. He arranged to see the plaintiff that same day and drained fluid from her right breast. He drained more fluid from her right breast on May 30 and June 1, 2000. Belinkie expected that the drainage would prevent the ischemia from causing the breast tissue to become necrotic or die. When the plaintiff visited Belinkie's office on June 6, 2000, however, Belinkie determined

that her right breast's nipple and areola had become necrotic, begun decaying and emitted a foul odor. Belinkie then performed a debridement, or surgical removal, of the necrotic tissue.

On June 7, 2000, the plaintiff consulted Elizabeth Brady, a breast surgeon who had treated her eight years previously. Brady recommended further debridement of breast tissue. The next day, Belinkie debrided more tissue from the plaintiff's right breast. Belinkie scheduled additional debridement for June 15, 2000, but the plaintiff canceled that procedure and decided to terminate her relationship with Belinkie. The plaintiff then sought treatment from other physicians. Her right breast healed completely by August 31, 2000.

The plaintiff filed a complaint against the defendants on July 12, 2002, alleging breach of contract, assault and battery, and negligence. The plaintiff claimed that she had consented to surgery on only her left breast rather than both breasts, that she had acquired an infection after surgery, and that Belinkie had failed to treat the infection, resulting in the loss of her right breast's nipple and areola. Following a trial to the court, the court rendered judgment in favor of the defendants on all counts. This appeal followed.

I

The plaintiff first claims that the court made clearly erroneous factual findings. Although the plaintiff identifies nine alleged erroneous factual findings, each of those findings relates to one of the following four subjects: (1) Belinkie's performance of surgery on both of the plaintiff's breasts, rather than only the left breast; (2) the testimony of Brady, regarding her examination of the plaintiff on June 7, 2000; (3) the testimony of Jerrold Ellner, an infectious disease specialist; and (4) whether the plaintiff contracted an infection following

surgery. We conclude that none of the court's allegedly erroneous factual findings was clearly erroneous.

We first set forth the standard of review. "[W]e will upset a factual determination of the trial court only if it is clearly erroneous. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Palmer*, 88 Conn. App. 330, 336, 869 A.2d 666 (2005).

A

We first address the court's finding that Belinkie never promised to confine the surgery to the plaintiff's left breast. The plaintiff argues that that finding was clearly erroneous because she testified at trial that Belinkie had promised to perform surgery only on her left breast. As the court explained in its memorandum of decision, however, it did not find the plaintiff's testimony credible because all of the other evidence indicated that she had consented to surgery on both breasts. We will not second-guess the court's assessment of the plaintiff's credibility. Our review of the record discloses evidence to support the court's finding that the plaintiff agreed to permit Belinkie to perform surgery on both of her breasts. The court's finding therefore was not clearly erroneous.

B

We next address the court's findings regarding Brady's testimony. The plaintiff directs us to the portion

of the court's memorandum of decision stating that Brady, Belinkie and Richard Restifo, a plastic surgeon, "all testified that [the plaintiff] had no infection on June 6, 2000 . . . . They also stated that foul odor often accompanies necrosis . . . ." The plaintiff points out that Brady first examined her on June 7, 2000, and that Brady had no knowledge of her condition following surgery on May 24, 2000. The plaintiff therefore contends that Brady could not have testified that the plaintiff had no infection on June 6, 2000. The plaintiff further argues that Brady did not testify that foul odor often accompanies necrosis. Notably, the plaintiff does not challenge the court's findings regarding the testimony of Belinkie and Restifo. Because Belinkie's and Restifo's testimony supports the court's findings that the plaintiff had no infection on June 6, 2000, and that foul odor often accompanies necrosis, the court's mischaracterization of Brady's testimony does not render its findings clearly erroneous.

## C

We next turn to the court's findings regarding Ellner's testimony. The plaintiff directs us to the following portion of the court's memorandum of decision: "[T]he only deviation from the standard of care found by . . . Ellner was . . . Belinkie's failure on June 6, 2000, to diagnose and treat a postoperative anaerobic infection of the plaintiff's right breast. Therefore, the only claim of deviation from the standard of care regarding treatment of the plaintiff that the court needs to address is the allegation that . . . Belinkie failed on June 6, 2000, to diagnose and treat an anaerobic infection. . . .

"Ellner explicitly declined to voice any fault with respect to . . . Belinkie's drainage and debridement regimen. . . . Ellner confined his criticism of . . . Belinkie's treatment to the failure to order antibiotics [that] quell anaerobic infection."

In the plaintiff's view, the court mischaracterized Ellner's testimony because he (1) "testified as to eight deviations [from] the standard of care, each of which involved the diagnosis and treatment of infection," and (2) faulted Belinkie's drainage and debridement regimen in that the regimen was deficient in the absence of any treatment for anaerobic infection. We fail to see any difference between the court's statements regarding Ellner's testimony and the plaintiff's depiction of that testimony. The court explained that Ellner found a deviation from the standard of care in Belinkie's failure to diagnose and treat an anaerobic infection, and that Ellner's criticisms focused on the lack of any treatment for anaerobic infection. The plaintiff acknowledges that Ellner's identification of "eight deviations [from] the standard of care . . . involved the diagnosis and treatment of infection." The plaintiff also acknowledges that Ellner criticized Belinkie's drainage and debridement regimen only insofar as that regimen necessarily was affected by the lack of any treatment for anaerobic infection. We conclude that the plaintiff has not identified any clearly erroneous findings in the court's statements regarding Ellner's testimony.

D

The last set of findings concerns whether the plaintiff contracted an infection after surgery. The plaintiff argues that the evidence was overwhelming that she developed an infection while Belinkie was treating her. In setting forth that argument, however, the plaintiff misconstrues our role as a reviewing court. The plaintiff had an opportunity to persuade the trial court that the evidence indicated the presence of an infection on June 6, 2000. The court found in favor of the defendants because it accepted certain evidence, such as the testimony of Belinkie and Restifo, that the plaintiff had not contracted an infection by that date. The court rejected the testimony of Ellner to the contrary. Having failed

to persuade the court that the evidence supported her view, the plaintiff must demonstrate on appeal that the court's factual findings were clearly erroneous. As we noted in part I B, the plaintiff does not challenge the court's findings concerning the testimony of Belinkie and Restifo. That testimony constitutes evidence in support of the court's finding that the plaintiff had not developed an infection by June 6, 2000. We therefore determine that the court's finding as to the lack of an infection was not clearly erroneous.

## II

The plaintiff's second claim is that the court should have drawn an adverse inference against Belinkie because he discarded the breast tissue that he debrided, rather than testing it for the presence of an infection. We disagree.

Our Supreme Court first considered the issue of spoliation of evidence in the context of a civil case in *Beers* v. *Bayliner Marine Corp.*, 236 Conn. 769, 675 A.2d 829 (1996). Although *Beers* was a products liability case in which evidence was destroyed after an accident, we find its consideration of the issue of spoliation of evidence nonetheless instructive. "[A]n adverse inference may be drawn against a party who has destroyed evidence only if the trier of fact is satisfied that the party who seeks the adverse inference has proven the following. First, the spoliation must have been intentional. . . . [There need not have been] an intent to perpetrate a fraud by the party or his agent who destroyed the evidence but, rather, . . . the evidence [must have] been disposed of intentionally and not merely destroyed inadvertently. . . .

"Second, the destroyed evidence must be relevant to the issue or matter for which the party seeks the inference. . . . Third, the party who seeks the infer-

ence must have acted with due diligence with respect to the spoliated evidence. . . . Finally . . . the trier of fact . . . is not required to draw the inference that the destroyed evidence would be unfavorable but . . . it may do so upon being satisfied that the above conditions have been met." (Citations omitted.) Id., 777–79.

The present case differs significantly from *Beers*, in which the spoliation of evidence occurred after an accident. Here, the spoliation of the plaintiff's breast tissue occurred before Belinkie had any reason to believe that the tissue would be the subject of litigation. The plaintiff appears not to have offered the court any evidence that a plastic surgeon ordinarily would be expected to retain tissue samples from every patient in anticipation of future litigation. Furthermore, the plaintiff failed to persuade the court, on the basis of Ellner's testimony, that Belinkie should have tested her breast tissue for the presence of an infection before discarding it. The court consequently had no basis from which to infer that Belinkie destroyed the plaintiff's breast tissue in order to avoid testing it for the presence of an infection.

*Beers* indicates that the drawing of an adverse inference against a party who has destroyed evidence is a decision left entirely to the trier of fact. In the present case, the court was not obligated to draw an adverse inference against Belinkie merely because he discarded the plaintiff's breast tissue. We reject the plaintiff's claim that the court should have inferred on the basis of Belinkie's failure to retain her breast tissue that the plaintiff had developed an infection.

The judgment is affirmed.

In this opinion the other judges concurred.