******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANNEMARIE MORRISSEY-MANTER *v.* SAINT
FRANCIS HOSPITAL AND MEDICAL
CENTER ET AL.
(AC 37628)

*Argued March 1—officially released June 28, 2016*

(Appeal from Superior Court, judicial district of
Hartford, Peck, J.)

*Henry E. Jacobs*, for the appellant (plaintiff).

*Christopher A. Klepps*, with whom was *Christopher
L. Brigham*, for the appellees (defendants).

*Opinion*

PRESCOTT, J. In this wrongful termination of employment action, the plaintiff, Annemarie Morrissey-Manter, appeals from the summary judgment rendered by the trial court in favor of the defendants, Saint Francis Hospital and Medical Center, and Saint Francis Care, Inc.[1] On appeal, the plaintiff claims that the court improperly granted the defendants' motion for summary judgment as to four counts of her amended complaint[2] because one or more genuine issues of material fact existed with respect to her claims that (1) an implied contractual agreement between the parties prohibited her discharge without cause, (2) the defendants terminated her employment in violation of an important public policy, (3) the defendants breached the covenant of good faith and fair dealing by terminating her employment in "bad faith," and (4) the defendants withheld certain medical records and destroyed evidence that would have supported her cause of action.[3] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The plaintiff was employed as a registered nurse at Saint Francis Hospital and Medical Center for thirty-two years. On June 4, 2012, at Manchester Memorial Hospital, a patient was seen for cardiac distress. A temporary cardiac pacemaker (pacer) was inserted into the patient. The patient was then transferred to the emergency department at the defendants' facility, and, from there, into the defendants' cardiac intensive care unit. During the transfer of the patient, an admitting nurse unhooked the patient's temporary pacer from the external pacer box, and the pacer box was returned to the ambulance crew that had transferred the patient. Subsequently, members of the nursing staff at the defendants' facility were unable to connect the patient's transvenous pacer wire to an external temporary pacer box because the defendants lacked a proper adapter.

During this event, the plaintiff came into the room to offer support to the patient's team and to help stabilize the patient. In violation of hospital policy, but in order to assist the medical team, she took a blade and cut a small portion of the plastic covering the end of the pacer wire in an attempt to make the pacer wire fit into the defendants' temporary pacer box. The plaintiff successfully connected the pacer wire to the temporary pacer box, and, at that point, the patient's blood pressure improved and he stabilized.

On June 7, 2012, Gilda Cabral, a nurse manager, met with the plaintiff and discussed a disciplinary action form that had been prepared against her on June 6, 2012. The form, after describing the event as previously discussed, stated that the patient's condition began to deteriorate the morning following his admission to Saint

Francis Hospital, and that Dr. Aneesh Tolat, an electro-physiologist, was asked to assess the patient. After assessing the patient, Dr. Tolat determined that the patient was receiving inadequate pacing because the pacer wire may have been compromised and was not stable. Because of this instability, a new pacer wire had to be inserted into the patient through catheterization. According to the form, Dr. Tolat emphasized that "a catheter can never be tampered with. Once it is, even if it seems that the wire is functioning correctly, there is always a question as to the stability of the wire." (Emphasis omitted.) Furthermore, Dr. Tolat was "very disturbed" by the plaintiff's action, which he character-ized as "inappropriate and unacceptable." On the form, the box labeled "termination" was marked as the appro-priate disciplinary step to be taken, and the form con-cluded: "This action posed a *significant* patient safety concern, as this action could have had potentially lethal consequences to the patient; since this wire was in place to ensure that the patient's heartbeat was paced correctly. By compromising the wire, this resulted in the patient having to undergo a procedure to have a new catheter inserted. In addition, this action posed a significant risk to the [h]ospital because this action is not within the scope of practice for a [s]taff [registered nurse]." (Emphasis in original.) The plaintiff resigned her position in lieu of termination.

The plaintiff commenced this action against the defendants on August 27, 2012. In her initial five count complaint, the plaintiff alleged breach of an implied contract of employment, violation of the covenant of good faith and fair dealing, wrongful discharge in viola-tion of public policy, negligent infliction of emotional distress, and defamation. On February 14, 2014, the defendants filed a motion for summary judgment, claim-ing that the plaintiff could not establish the prima facie elements for any of the claims alleged in her complaint. In support of their motion, the defendants filed a memo-randum of law, an affidavit by an employee in the defen-dants' human resources department, copies of two disciplinary action forms against the plaintiff, copies of the defendants' disciplinary action policy and pension plan policy, the plaintiff's responses to the defendants' first set of interrogatories, and an excerpt from the defendants' employee handbook.

On April 15, 2014, the plaintiff filed an objection to the defendants' motion for summary judgment. In sup-port of her objection, the plaintiff filed a memorandum of law, the plaintiff's affidavit, and a copy of the plain-tiff's letter of resignation. The court held a hearing on the defendants' motion for summary judgment and the plaintiff's objection on May 5, 2014. At that time, the plaintiff stated that she wanted to amend her complaint to include a claim for spoliation of evidence. The court instructed the plaintiff to file such a request as soon as possible.

On May 21, 2014, the plaintiff filed a request for permission to amend her complaint to add a count for spoliation of evidence, alleging that the defendants had destroyed and altered the patient's medical records, and had disposed of the pacer wire in bad faith. On July 28, 2014, which was the second day of the hearing on the motion for summary judgment, the court granted the plaintiff's request. With the court's permission, the parties filed supplemental briefs and exhibits that addressed the claim of spoliation. The court issued its memorandum of decision on January 5, 2015. The court concluded that the evidence submitted did not support the existence of an implied contract of employment, and, thus, the plaintiff's status was as an at-will employee. The court also concluded that the plaintiff had not established a genuine issue of material fact regarding the prima facie elements for a cause of action for breach of the covenant of good faith and fair dealing, that she failed to cite a relevant public policy that was violated by her termination of employment, and that she failed to establish a genuine issue of material fact regarding the elements of a claim for spoliation because there was no evidence that any medical records had been destroyed or that the pacer wire had been destroyed by the hospital in bad faith. Accordingly, the court granted the defendants' motion for summary judgment as to all six counts of the plaintiff's complaint. This appeal followed.

Before reaching the plaintiff's individual claims, we set forth this court's standard of review in a summary judgment case. "The law governing summary judgment and the accompanying standard of review are well settled. Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . .

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . .

"The party opposing a motion for summary judgment

must present evidence that demonstrates the existence of some disputed factual issue . . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents. . . . The opposing party to a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence. . . . Our review of the trial court's decision to grant a motion for summary judgment is plenary." (Internal quotation marks omitted.) *Brusby* v. *Metropolitan District*, 160 Conn. App. 638, 645–46, 127 A.3d 257 (2015).

I

The plaintiff first claims that the trial court improperly rendered summary judgment on her count alleging the breach of an implied contract of employment because there was a genuine issue of material fact regarding the existence of an implied employment contract as evidenced by the defendants' "words, actions, conduct [and] course of performance . . . ." (Emphasis omitted.) Specifically, the plaintiff argues that she was not an at-will employee because she was subject to progressive discipline, received merit pay and annual job performance reviews, participated in a 401 (k) retirement plan, received verbal assurances of continued employment, and was referred to as " 'a team player and devoted to her job.' " For these reasons, the plaintiff argues, she could not be discharged without just cause. We conclude that the court properly rendered summary judgment on this count.

The following additional procedural history is necessary for our review of this claim. In support of their motion for summary judgment, as supplemented, the defendants submitted an affidavit, copies of their disciplinary action and pension plan policies, and an excerpt from their employee handbook stating that "[t]he relationship between Saint Francis and its employees is a relationship of employment at will." The affidavit, signed by Diane Trudeau, a manager in their human resources department, averred that the plaintiff was a noncontractual employee, the defendants adhere to the at-will doctrine in all of their policies and procedures, the plaintiff signed an acknowledgement in 1986 that she received a copy of the employee handbook containing such policies, and at-will employment at the defendants' facility can be documented back to 1992. The policies and employee handbook excerpt that the defendants filed with their motion for summary judg-

ment corroborated Trudeau's statements.

The disciplinary action policy provides that "[a]n employee may be given a Final Written Warning with or without Suspension or be terminated, at any time, with or without notice, for a violation of Organization policy or practice or a significant performance issue." (Emphasis omitted.) Another policy, titled "Employment at Will," provides in relevant part: "The purpose of this policy is to affirm that employees who do not have a separate, individual employment contract with the hospital for a specific, fixed term of employment are employed at the will of the hospital for an indefinite period. Employees may resign from the hospital at any time, for any reason, and may be terminated by the hospital at any time, for any reason, with or without cause, and with or without notice." That policy further provides that "[t]his policy shall not be modified by any statements contained in this or any other employee handbooks, employment applications, hospital recruiting materials, memoranda, or other materials provided to employees in connection with their employment. None of those documents, whether singly or combined, shall create an expressed or implied contract of employment for a definite period or an expressed or implied contract concerning any terms or conditions of employment." The final paragraph in that policy provides: "Nothing contained in this manual, employee handbooks, employment applications, memoranda, or other materials provided to employees in connection with their employment shall require the employer to have 'just cause' to terminate that employee or otherwise restrict the employer's right to terminate an employee at any time or for any reason."

In her objection to the defendants' motion for summary judgment, the plaintiff did not challenge the existence of the policies as described. Rather, she argued that she had been employed at the defendants' facility for thirty-two years, had been assured that she would remain employed there as long as she did a good job, had received complimentary correspondence regarding her exemplary service, and had been advised that disciplinary action was generally progressive and was a process. Additionally, she alleged that the defendants admitted that they have a matching pension plan contribution in place for all eligible employees. Her affidavit repeats these allegations, although she does not identify the persons who assured her of continued employment if her work performance remained satisfactory. On appeal, the plaintiff contends that she provided sufficient information to create a genuine issue of material fact as to whether she had an implied contract of employment with the defendants. We disagree.

"In Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary. Employment at will grants

both parties the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability." (Internal quotation marks omitted.) *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 697–98, 802 A.2d 731 (2002). "In order to prevail on [her] claim, the plaintiff must demonstrate an actual agreement by the defendant to have an employment contract with [her]. A contract implied in fact, like an express contract, depends on actual agreement. . . . Accordingly, to prevail on [her] wrongful termination claim, which alleged the existence of an implied agreement between the parties, the plaintiff had the burden of proving by a fair preponderance of the evidence that [the defendant] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to [her] under which [she] could not be terminated without just cause [following progressive disciplinary measures]. . . . To survive a motion for summary judgment, the plaintiff had the burden of presenting evidence that the defendant had agreed to some form of contract commitment.

"A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties. . . . The mere fact that the plaintiff believed [certain actions or policies] to constitute a contract does not bind [the defendant] without some evidence that it intended to be bound to such a contract." (Citations omitted; internal quotation marks omitted.) *Reynolds* v. *Chrysler First Commercial Corp.*, 40 Conn. App. 725, 729–30, 673 A.2d 573, cert. denied, 237 Conn. 913, 675 A.2d 885 (1996).

The plaintiff's arguments in support of the existence of an implied contract of employment have been made by other plaintiffs in other cases and have been rejected by this court. For example, in *Gagnon* v. *Housatonic Valley Tourism District Commission*, 92 Conn. App. 835, 843, 888 A.2d 104 (2006), "[t]he plaintiff claim[ed] that such things as periodic reviews, setting dates at which there would be salary increases, setting long-term benefits and the way other employees were treated [were] evidence of an implied contract between her and [the defendant] that she would not be discharged except for cause. [This court held that] [t]he plaintiff fail[ed] to recognize, however, that it [was] her burden to establish that adherence to these policies and procedures was the result of a contractual commitment by the defendant. [C]ontracts are not created by evidence of customs and usage." (Internal quotation marks omitted.)

Furthermore, as previously quoted from the defendants' policies and employee handbook, the defendants disclaimed anything other than an at-will employment relationship with any of their employees who did not have written contracts. Our Supreme Court has "stated with unambiguous clarity that employers can protect

themselves against employee contract claims based on statements made in personnel manuals by following either (or both) of two simple procedures: (1) eschewing language that could reasonably be construed as a basis for a contractual promise; and/or (2) including appropriate disclaimers of the intention to contract . . . ." (Internal quotation marks omitted.) *Gaudio* v. *Griffin Health Services Corp.*, 249 Conn. 523, 535, 733 A.2d 197 (1999).

The evidence presented to the trial court by the defendants in support of their motion for summary judgment reveals the existence of such disclaimers in their policies and employee handbook, and the plaintiff presented no competent summary judgment evidence that contradicts that evidence. See *Brusby* v. *Metropolitan District*, supra, 160 Conn. App. 646. Accordingly, the trial court properly rendered summary judgment as to this count because the plaintiff failed to present evidence that established that there was a genuine issue of material fact regarding whether an implied contractual agreement existed that would prohibit the termination of her employment except for just cause.

## II

The plaintiff next claims that the court improperly rendered summary judgment on count three of her complaint, which alleges that the defendants terminated her employment in violation of an important public policy. See *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 476, 427 A.2d 385 (1980) (employer lacks discretion to terminate at-will employee if termination would violate important public policy). The defendants respond that the court properly determined that the plaintiff failed to identify an important and clearly articulated public policy that was violated as the result of her discharge. We conclude that the plaintiff cannot prevail on her claim.

The following additional procedural history is relevant to this claim. In her amended complaint, the plaintiff alleged that her termination violated two public policies. First, she alleged that "[e]ven if this was an at-will employment arrangement, allowing an employer to terminate an employee for saving a man's life is against public policy. Saving a person's life is a substantial public policy and should fall under [t]he [p]ublic [p]olicy [e]xception to the [a]t-[w]ill [e]mployment [r]ule." Second, she alleged that "[t]he [defendants'] attempt to cover up their liability exposure, by firing the [plaintiff] who stepped up to the plate to save a man's life, is improper and violates public policy."

In their motion for summary judgment, the defendants claimed that the plaintiff had "not alleged an established public policy" and that she should not "be immunized from an adverse employment action for allegedly saving a patient's life . . . ." At the hearing

before the trial court on their motion, the defendants' counsel argued that the plaintiff had altered medical equipment, which was against hospital policy, and that her termination from employment was therefore proper even if she did save a patient's life.

In response, in her opposition to the defendants' motion for summary judgment, the plaintiff expanded upon her public policy claim. In support of her allegation that her termination violated a public policy against covering up medical malpractice, the plaintiff set forth two arguments. First, the plaintiff argued that terminating an employee in order to hide medical malpractice by the employer violates a general public policy against covering up negligence. Second, the plaintiff appeared to argue that the defendants had a duty to report adverse medical events to the Department of Health pursuant to General Statutes § 19a-127n (b).[4] According to the plaintiff, that statute embodies a public policy against hospitals covering up medical malpractice, which her termination violated because the defendants' goal in terminating her employment was to cover up an adverse event—the inability to connect the pacer wire to the temporary pacer box.

In support of her allegation that her termination violated a public policy in favor of saving a person's life, the plaintiff argued that her termination violated the public policy inherent in the rescue doctrine, because the defendants' negligence placed the patient in peril and invited rescue. "The rescue doctrine is a bar to or precludes the affirmative defenses of contributory negligence and assumption of the risk. A person is not contributorily negligent who, with due care, encounters a risk created by a defendant's negligence in order to perform a rescue necessitated by that negligence, and it is not contributory negligence for a plaintiff to expose him- or herself to a danger in a reasonable effort to save a third person from harm." (Footnotes omitted.) 65A C.J.S. 46–47, Negligence § 267 (2010). "The 'rescue doctrine' allows an injured rescuer to recover damages from the person whose negligence created the need for rescue."[5] Id., p. 48.

The court granted the defendants' motion for summary judgment as to the plaintiff's public policy count. Concerning the plaintiff's argument that her termination violated a public policy against covering up medical malpractice, the court held: "While the plaintiff argues that she was terminated in an effort to cover up possible medical malpractice committed by the defendants' other employees, she has proffered no evidence of this alleged malpractice beyond simply speculating that it occurred; nor has the plaintiff cited a relevant public policy that was violated by her termination under the circumstances."

With respect to the plaintiff's assertion that her termination violated the public policy inherent in § 19a-127n

(b), the court stated: "An 'adverse event' is defined within [§ 19a-127n (b)] as 'any event that is identified on the National Quality Forum's List of Serious Reportable Events or on a list compiled by the Commissioner of Public Health and adopted as regulations' . . . . General Statutes § 19a-127n (a) (1). Without entering the National Quality Forum's List of Serious Reportable Events into evidence, the plaintiff states that the List includes 'patient death or serious injury associated with the use or function of a device in patient care, in which the device is used or functions other than as intended.' The plaintiff alleges that because the defendants did not report the adverse event at the heart of this litigation to the Department of Public Heath, the event could not have transpired the way the defendants claim it did, and therefore a material issue of fact exists, which precludes the entry of summary judgment as to count three. The plaintiff does not specify exactly what this material issue of fact is, and it is difficult to see how the defendants' alleged failure to comply with the statute is relevant to whether the plaintiff's dismissal occurred for a reason that violates public policy."

Concerning the public policy inherent in the rescue doctrine, the court held that "[t]he doctrine is invoked only in determining whether the rescuer's contributory negligence is to be excused. . . . The rescue doctrine does not constitute a public policy for the purposes of an exception to the at-will employment doctrine; nor is it clear how the rescue doctrine is applicable to the circumstances of the plaintiff's case." (Citation omitted; internal quotation marks omitted.)

Importantly, on appeal, the plaintiff does not reassert her contention, made before the trial court, that her termination violated the public policy in favor of saving a person's life as reflected in the rescue doctrine. The plaintiff did not brief on appeal, or mention in any way, her argument that her termination violated the public policy inherent in the rescue doctrine in favor of saving a person's life. Indeed, we have scoured the relevant portions of the plaintiff's brief and have found absolutely no mention or analysis of a general public policy of saving lives or the rescue doctrine. Although the plaintiff factually argues in her brief that her actions saved the patient's life, she does not argue that the defendants' actions in terminating her employment after she saved a life violated an important and clearly articulated public policy of "saving lives." Accordingly, we deem this claim abandoned and decline to review it. See *Fradianni* v. *Protective Life Ins. Co.*, 145 Conn. App. 90, 92 n.2, 73 A.3d 896 (claim or argument not briefed deemed abandoned), cert. denied, 310 Conn. 934, 79 A.3d 888 (2013); *Deutsche Bank National Trust Co.* v. *Shivers*, 136 Conn. App. 291, 292 n.2, 44 A.3d 879 (claim not briefed on appeal deemed abandoned, and court may decline to review it), cert. denied, 307 Conn. 938, 56 A.3d 950 (2012).

The dissent implicitly concedes that this public policy ground is not raised, analyzed, or even mentioned in the portion of the plaintiff's appellate brief addressing count three. Instead, the dissent appears to suggest that a party has not abandoned a claim on appeal as long as that claim was made before the trial court and mentioned in oral argument before this court. This assertion is contrary to well established precedent that appellate courts will treat as abandoned claims that are not briefed adequately.[6] See *Barros* v. *Barros*, 309 Conn. 499, 503 n.4, 72 A.3d 367 (2013) (claim deemed abandoned for inadequate briefing); *State* v. *Weston*, 164 Conn. 635, 636, 325 A.2d 457 (1973) (claim not briefed on appeal, although argued during oral argument, treated as abandoned); *Braham* v. *Newbould*, 160 Conn. App. 294, 312 n.15, 124 A.3d 977 (2015) (claim abandoned that was not properly briefed because "[i]t is not the role of this court to undertake the legal research and analyze the facts in support of a claim or argument when it has not been briefed adequately" [internal quotation marks omitted]).

Adherence to this well established precedent is particularly warranted in this case for the following reasons. The dissenting opinion appears to find an important and clearly articulated public policy of "saving lives" inherent in the rescue doctrine, Connecticut's good Samaritan law pursuant to General Statutes § 52-557b, and the public safety exception to the warrant requirement. Because these potential sources of a public policy exception to the employment at-will doctrine were not raised by the plaintiff in her brief, the defendants have had no opportunity to respond to or analyze them.

Moreover, although this court has the discretion to address an abandoned claim; *Ward* v. *Greene*, 267 Conn. 539, 546, 839 A.2d 1259 (2004); we should be particularly cautious of addressing a claim that, in essence, asks the court to recognize a new and broad public policy exception to the at-will employment doctrine without adequate briefing because of the narrowness of the public policy exception to the at-will employment doctrine. See *Thibodeau* v. *Design Group One Architects*, *LLC*, supra, 260 Conn. 701 ("the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one" [internal quotation marks omitted]). Caution is particularly warranted in a case, like this one, involving emergency medicine. There may be compelling reasons in the complex world of emergency medicine that would counsel against recognizing the public policy articulated by the dissent, at least as broadly as the dissent has framed it. As this court previously has suggested in *Armshaw* v. *Greenwich Hospital*, 134 Conn. App. 134, 138, 38 A.3d 188 (2012), medical providers should have significant discretion to terminate the employment

of an at-will employee who has violated hospital procedures and policies that are in place to guarantee the safety and proper care of patients. Id. ("[o]ur review of the record . . . does not uncover any explicit statutory mandate, constitutional provision or judicial determination that prevents a hospital from discharging an at-will nursing employee, who has been the subject of previous disciplinary action, for failing to follow conduct and quality of work protocols designed to ensure the safety and proper care of its patients"). Thus, it is particularly troublesome to recognize an amorphous "saving lives" public policy exception to the at-will employment doctrine in the context of emergency medicine, especially in a case in which such a public policy has not been briefed adequately.

Even if we were inclined to agree with the dissent that such a public policy exists, the plaintiff has failed to offer any competent summary judgment evidence to establish that a genuine issue of material fact exists regarding whether the termination of her employment violated such a public policy. The dissent considers the uncertified deposition testimony of various members of the defendants' medical staff that the plaintiff attached to her opposition to the motion for summary judgment in concluding that the plaintiff has established a genuine issue of material fact as to whether the termination of her employment violated the alleged public policy. It is unclear, however, whether the trial court considered these documents or whether it excluded them. In its memorandum of decision, the trial court noted that the plaintiff offered these uncertified documents with her opposition to the motion for summary judgment, but makes no further reference to them. The memorandum of decision, however, is unclear as to whether the court actually considered the uncertified deposition testimony. The transcript from the hearing on the motion for summary judgment, however, strongly suggests that the court did not consider these documents. The court specifically advised the plaintiff's counsel that "there has to be something in the record in a proper form and in compliance with the rule of practice for the court to consider in opposition to this motion for summary judgment. . . . I have nothing . . . that's a problem."

Instead, the plaintiff on appeal argues only that there was a genuine issue of material fact concerning whether her termination violated a public policy against covering up medical malpractice. In support of this claim, the plaintiff, before the trial court, relied on § 19a-127n, which requires hospitals to report adverse medical events, and, thus, according to the plaintiff, embodies a public policy prohibiting hospitals from covering up medical malpractice. On appeal, she also argues that there is a general public policy against terminating an employee in order to cover up the employer's negligence. The plaintiff further argues that to the extent

that such a public policy does not exist, this court has the authority to judicially create such a public policy.

We conclude that the trial court properly rendered summary judgment with respect to the plaintiff's claim that her termination violated an important public policy prohibiting an employer from covering up negligence. We reach this conclusion for primarily two reasons. First, the plaintiff has failed to establish a genuine issue of material fact regarding whether her termination violated this alleged public policy as it relates to § 19a-127n, which is the only legal authority that she cited before the trial court as support for the existence of this public policy. Second, even if we assume that there is a recognized, general public policy exception that prohibits an employer from engaging in conduct intended to hide instances of negligence, the plaintiff has failed to establish a genuine issue of material fact regarding whether the defendants were negligent and whether she was terminated to cover up that negligence.

We begin with the legal principles that guide our analysis. Our Supreme Court has "establish[ed] the principle that public policy imposes some limits on unbridled discretion to terminate the employment of someone hired at will." *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 476. Although the court in *Sheets* "recognized a public policy limitation on the traditional employment at-will doctrine in an effort to balance the competing interests of employers and employees . . . [it also] recognized the inherent vagueness of the concept of public policy and the difficulty encountered when attempting to define precisely the contours of the public policy exception. In evaluating claims, [courts should] look to see whether the plaintiff has . . . alleged that his discharge violated any explicit statutory or constitutional provision . . . or whether he alleged that his dismissal contravened any judicially conceived notion of public policy." (Citations omitted; internal quotation marks omitted.) *Thibodeau* v. *Design Group One Architects, LLC*, supra, 260 Conn. 700–701.

Our Supreme Court also "repeatedly [has] underscored [that] adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one. . . . [C]ourts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation . . . . Consequently, we have rejected claims of wrongful discharge that have not been predicated upon an employer's violation of an important and clearly articulated public policy." (Citations omitted; internal quotation marks omitted.) Id., 698–99; see also *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 680, 513 A.2d 66 (1986) (public policy exception to at-will employment termination requires particular, explicit public policy); *Armshaw* v. *Greenwich*

*Hospital*, supra, 134 Conn. App. 138 (exception requires "*explicit* statutory mandate, constitutional provision or judicial determination" [emphasis added]).

We first address the plaintiff's argument that her termination violated the public policy inherent in our health care statutes mandating the accurate reporting of adverse events. In her appellate brief, the plaintiff does not cite to any specific health care statutes; rather, she merely alleges that "[t]he [d]efendants attempt to hide their corporate negligence by instantly terminating [the plaintiff] . . . and creating false documents in [violation] of health statutes requiring honest and accurate reporting of adverse health care events . . . . These statutes taken collectively constitute an important public policy." (Emphasis omitted.) In her opposition to the motion for summary judgment, however, the plaintiff cited only to § 19a-127n (b)[7] in support of this argument. Accordingly, we limit our review to whether there was a genuine issue of fact concerning whether the plaintiff's termination violated a public policy inherent in § 19a-127n (b), one that prohibits hospitals from covering up negligence because it requires the accurate reporting of adverse medical events that occur at hospitals. See *Gordon* v. *Gordon*, 148 Conn. App. 59, 65, 84 A.3d 923 (2014) ("[w]e have consistently declined to review claims based on a ground different from that raised in the trial court" [internal quotation marks omitted]); *State* v. *Ulen*, 31 Conn. App. 20, 29, 623 A.2d 70 (same), cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993).

Section 19a-127n (b) provides in relevant part: "[A] hospital or outpatient surgical facility shall report adverse events to the Department of Public Health [department] on a form prescribed by the commissioner . . . ." An "adverse event" is defined as "any event that is identified on the National Quality Forum's List of Serious Reportable Events or on a list compiled by the Commissioner of Public Health and adopted as regulations . . . ." General Statutes § 19a-127n (a). Section 19a-127n-2 of the Regulations of Connecticut State Agencies provides in relevant part: "(b) All adverse events identified in the National Quality Forum's list of serious events, as amended, and those on the list compiled by the department, as amended, shall be reported by the facility on the adverse event reporting form prescribed by the Commissioner. . . ."[8]

For two reasons, the plaintiff failed to establish that an issue of material fact existed concerning whether her termination violated the public policy allegedly inherent in § 19a-127n. First, as the trial court found, the plaintiff failed to provide competent summary judgment evidence that the statute applied to the facts of this case. The plaintiff here makes the same error as did the plaintiff in *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 161, 745 A.2d 178 (2000). Our Supreme Court in

*Burnham* held that the plaintiff failed to establish that a genuine issue of material fact existed as to whether her termination violated the public policy inherent in General Statutes § 31-51m because she offered no competent summary judgment evidence that the circumstances of her termination met the requirements of the statute. Id. Section 31-51m prohibits employers from retaliating against employees who report a violation of a federal or state law to a "public body . . . ." (Emphasis omitted; internal quotation marks omitted.) Id., 160. Prior to her termination, the plaintiff in *Burnham* had reported the defendant's allegedly unsafe dental practices to the state dental association. Id., 155. The plaintiff, however, failed to offer any competent summary judgment evidence "that the dental association [was] a public body as defined in § 31-51m (a) (4). Therefore, because the plaintiff failed to present evidence that created a material issue of fact as to whether her termination violated the provisions of § 31-51m, we conclude[d] that the plaintiff [could not] use the public policy embodied therein to support her claim of wrongful discharge based on a violation of public policy." Id., 161.

Similarly, in the present case, the plaintiff has offered no competent summary judgment evidence that § 19a-127n is applicable. For the plaintiff's termination to violate the public policy allegedly inherent in § 19a-127n, the event at issue had to qualify as an adverse event under the statute, and her termination had to somehow be designed to circumvent the defendants' duty to report the adverse event. The plaintiff provided no competent summary judgment evidence that established that there was a genuine issue of material fact as to whether the event at issue qualified as an adverse event pursuant to § 19a-127n. As the trial court stated, the plaintiff did not provide as evidence the National Quality Forum's List of Serious Reportable Events or the list compiled by the department. Although the plaintiff asserted in her pleadings that the event at issue qualified as an adverse event under the National Quality Forum's List of Serious Reportable Events, she offered no evidence to support this assertion. See *Trotta* v. *Branford*, 26 Conn. App. 407, 412, 601 A.2d 1036 (1992) ("[d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred"). Because the plaintiff has offered no competent summary judgment evidence that § 19a-127n is applicable, she cannot use the public policy allegedly embodied therein to support her claim of wrongful discharge based on a violation of public policy.

Second, even if the event at issue was an adverse event under § 19a-127n, the plaintiff has not established a genuine issue of material fact regarding whether her termination violated the public policy allegedly inherent

in § 19a-127n. Specifically, the plaintiff has failed to explain how her termination alleviated the defendants' duty to report an adverse event pursuant to § 19a-127n or that she was terminated for reporting the event herself. Despite terminating the plaintiff, the defendants' duty to report the adverse event, assuming that the event at issue was an adverse event, continued to exist. Whether the defendants terminated the plaintiff's employment had no effect on their statutory duty to report the adverse event.[9]

Additionally, assuming that the allegedly adverse event was not reported to the department, the plaintiff has failed to explain how not reporting the adverse event necessarily equates to an attempt to cover up its alleged negligence. Indeed, the plaintiff conflates a failure to comply with the statutory requirement to report adverse medical events with an attempt to cover up negligence. Not all adverse medical events that presumably must be reported under § 19a-127n, however, constitute negligence. Thus, it is unclear how the plaintiff's termination violated any public policy allegedly inherent in § 19a-127n prohibiting an employer from covering up negligence.

Furthermore, this case is distinguishable from cases in which our Supreme Court has held that it violated public policy to terminate an employee who insisted that an employer adhere to a statute or regulation. In *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 478, our Supreme Court held that it violated public policy to terminate an employee in retaliation for the employee calling to the employer's attention repeated violations of the Connecticut Uniform Food, Drug and Cosmetic Act, General Statutes (Rev. to 1977) § 19-211 et seq., now codified at General Statutes § 21a-91 et seq. In the present case, the plaintiff did not allege that she was terminated because she insisted that the defendants comply with § 19a-127n, nor that she was terminated because she reported the defendants' lack of compliance with the statute to the Department of Public Health or another authority. Thus, the plaintiff's claim falls outside the narrow public policy recognized in *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 478.

Next, we address the plaintiff's more general argument that her termination violated an important and clearly articulated public policy prohibiting an employer from terminating an employee in order to cover up its negligence. The plaintiff argues that, to the extent that such a public policy is not clearly established in statutes or case law, this court may and should judicially create such a public policy. For the reasons that follow, we agree with the defendants that the plaintiff has failed to identify a clearly articulated, important public policy against terminating an employee in order to cover up negligence, and we decline to judicially create such a general public policy in the circumstances

of this case. Additionally, even if we assume that such a general public policy exists, the plaintiff has failed to establish that there is a genuine issue of material fact regarding whether her termination violated such a public policy because she offered no competent summary judgment evidence that the defendants were negligent and that the defendants terminated her employment in an attempt to hide that negligence.

After the defendants argued in their motion for summary judgment that the plaintiff alleged no particular public policy that was violated by her termination, the plaintiff was required to establish that there existed an issue of material fact as to whether her termination violated an important public policy "clearly articulated" in state statutes, the state constitution, or prior case law. *Thibodeau* v. *Design Group One Architects*, *LLC*, supra, 260 Conn. 701; see also *Morris* v. *Hartford Courant Co.*, supra, 200 Conn. 680 (public policy exception to at-will employment termination requires particular, explicit public policy); *Armshaw* v. *Greenwich Hospital*, supra, 134 Conn. App. 138 (exception requires "*explicit* statutory mandate, constitutional provision or judicial determination" [emphasis added]).

The plaintiff, however, with the sole exception of § 19a-127n, has failed to cite to this court or to the trial court a single statute or any case law in support of the alleged public policy against terminating an employee to cover up negligence. We have already concluded that § 19a-127n does not bear the weight that the plaintiff places upon it. Accordingly, the plaintiff falls far short of creating a genuine issue of material fact concerning the violation of an important and clearly articulated public policy against terminating an employee to cover up negligence because she never established the existence of such a public policy. Additionally, because the plaintiff's argument contains no supporting law or analysis, the precise contours of her alleged public policy are unknown, and we decline to establish such a public policy in this case.[10]

Even if this court was inclined to establish such a public policy in this case, the plaintiff has failed to provide any competent summary judgment evidence to create a genuine issue of material fact that the defendants were negligent and that she was terminated to cover up their negligence. The plaintiff's allegation of negligence is supported by only speculation, not by evidence submitted in opposition to the motion for summary judgment. Although the plaintiff offered evidence of the defendants' conduct regarding the incident in question, she offered no evidence, such as an affidavit from an expert in emergency medicine, that would support a finding that the defendants' conduct was negligent or that the defendants would have been concerned about liability to the patient.

Additionally, the plaintiff has not come forward with

any evidence from which an inference may be drawn that her termination furthered, or was designed to further, the defendants' alleged goal of covering up medical malpractice. Nor has the plaintiff offered any evidence that the defendants took any steps intended to or that were in fact successful in hiding evidence of their alleged negligence from the particular patient involved in this case.[11] Without such evidence, the causal connection between the plaintiff's termination and the defendants' alleged attempt to cover up potential negligence remains unclear. Although the plaintiff's employment was terminated, the plaintiff offers no explanation for how her termination would shield the defendants from liability in the event that they were sued for medical malpractice by the patient or the patient's estate.

In sum, the plaintiff has failed to establish the existence of a genuine issue of material fact concerning whether, by terminating her employment, the defendants violated the public policy allegedly inherent in § 19a-127n in favor of the accurate reporting of adverse events or a more general public policy against terminating an employee to cover up negligence. Accordingly, we conclude that the trial court properly rendered summary judgment in favor of the defendants as to the plaintiff's count alleging that the defendants terminated her employment in violation of an important public policy.

III

The plaintiff next claims that the court improperly rendered summary judgment on her count alleging that the defendants breached the covenant of good faith and fair dealing by terminating her employment in bad faith. Specifically, she contends that the court improperly concluded that "the plaintiff . . . failed to establish the prima facie elements of a cause of action for breach of the covenant of good faith and fair dealing." because there was a genuine issue of material fact regarding the existence of an implied contract that prohibited her termination except for just cause. The defendants argue that the court was correct in its conclusion because there was no genuine issue of material fact regarding the existence of an implied contract between the parties. We agree with the defendants.

Our Supreme Court has "recognize[d] an implied covenant of good faith and fair dealing in every contract without limitation. . . . Essentially it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." (Citations omitted.) *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 566–67, 479 A.2d 781 (1984). "Although we endorse the applicability of the good faith and fair dealing principle to employment

contracts, its essence is the fulfillment of the reasonable expectations of the parties. Where employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right. Like other contract provisions, which are unenforceable when violative of public policy, the right to discharge at will is subject to the same restriction." Id., 572. Accordingly, for the plaintiff to survive summary judgment on this claim in this case, she was required to establish a genuine issue of material fact regarding the existence of an implied employment contract.[12]

As previously discussed, the plaintiff failed to establish a genuine issue of material fact concerning whether the parties had an implied contract that prohibited her discharge without just cause. Accordingly, the court properly rendered summary judgment as to the plaintiff's count alleging breach of the covenant of good faith and fair dealing.

IV

Finally, the plaintiff claims that the court improperly granted the defendants' motion for summary judgment on her spoliation of evidence count because genuine issues of material fact existed with respect to her claim that the defendants withheld certain medical records and destroyed evidence that would have supported her cause of action. The defendants argue that the court properly determined that the plaintiff's spoliation claim failed because she did not provide any evidence that medical records had been destroyed or that the patient's pacer wire, which was replaced and discarded by the defendants' medical staff, had been destroyed in bad faith. We agree with the defendants that the court properly rendered summary judgment as to this count.

The following additional facts and procedural history are relevant to this claim. On August 15, 2012, approximately two months after the incident at issue, the plaintiff sent a letter to the defendants, requesting that the pacer wire and the patient's medical records be preserved. In her revised complaint, as amended, the gravamen of the plaintiff's claim of spoliation was that the transvenous pacer wire that had been altered by the plaintiff was subsequently destroyed by the defendants. Thus, the plaintiff argued that she could not have an expert examine the pacer wire to dispute the defendants' position that she damaged the pacer wire when she altered it. The plaintiff further alleged that "[t]he medical record has glaring absences of documentation regarding the care of the patient that is the subject of the disciplinary action against the [p]laintiff." In their motion for summary judgment, as supplemented, the defendants represented that they had provided more than 900 pages of medical records and that the plaintiff had provided no documentation whatsoever to support her speculative claim that portions of the medical record had been destroyed, let alone intentionally

destroyed. With respect to the pacer wire, the defendants argued that it had been disposed of shortly after the incident and that they were under no obligation to preserve an altered piece of medical equipment.

In rendering summary judgment on this claim, the trial court concluded that "[although] the plaintiff has speculated that the defendants destroyed certain of the patient's medical records, she has presented no evidence that would tend to support that allegation. [Additionally, although the parties agree that the defendants destroyed the pacer wire] there is no evidence that the pacer wire was destroyed in bad faith . . . ."

"[T]he tort of intentional spoliation of evidence consists of the following essential elements: (1) the defendant's knowledge of a pending or impending civil action involving the plaintiff; (2) *the defendant's destruction of evidence*; (3) *in bad faith, that is, with intent to deprive the plaintiff of his cause of action*; (4) the plaintiff's inability to establish a prima facie case without the spoliated evidence; and (5) damages." (Emphasis added.) *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 244–45, 905 A.2d 1165 (2006).

Our careful review of the record supports the court's determination that the plaintiff failed to establish a genuine issue of material fact regarding the destruction of the patient's medical record and the defendants' alleged bad faith in destroying the pacer wire. Regarding the pacer wire, the facts of this case are analogous to those in *Surrells* v. *Belinkie*, 95 Conn. App. 764, 898 A.2d 232 (2006).[13] In *Surrells*, the defendant plastic surgeon performed breast surgery on the plaintiff. Id., 765. Subsequently, the plaintiff noticed that her right breast was swollen and leaking fluid. The defendant determined that the plaintiff's right breast had become necrotic and performed a debridement, or surgical removal, of the necrotic tissue. Id., 765–66. The defendant disposed of the necrotic tissue following the surgery and did not test it for the presence of an infection. Id., 770.

The plaintiff in *Surrells* filed a complaint against the defendant, alleging medical negligence on the ground that his negligence during the original breast surgery caused an infection in her right breast. Id., 766. The plaintiff further alleged spoliation of the evidence because she could not have the necrotic tissue tested for an infection to establish that the defendant's actions had caused an infection to occur. Id., 770. The trial court found that the plaintiff failed to establish that she developed an infection and declined to draw an adverse inference against the defendant on the ground that he did not intentionally destroy the necrotic tissue. On appeal, this court affirmed the trial court's decision, holding that "the spoliation of the plaintiff's breast tissue occurred before [the defendant] had any reason to believe that the tissue would be the subject of litigation. The plaintiff appears not to have offered the court any

evidence that a plastic surgeon ordinarily would be expected to retain tissue samples from every patient in anticipation of future litigation. . . . The court consequently had no basis from which to infer that [the defendant] destroyed the plaintiff's breast tissue in order to avoid testing it for the presence of an infection." Id., 771.

Similarly, in the present case, the plaintiff failed to offer any evidence that the pacer wire was disposed of for any other purpose than that which medical waste is ordinarily disposed.[14] Additionally, the August 15, 2012 letter requesting that the pacer wire be preserved was sent by the plaintiff to the defendants months after the incident in question, which was approximately when the pacer wire was disposed of. Thus, the plaintiff has failed to offer any evidence from which an inference could be drawn that the defendants disposed of the pacer wire in bad faith in order to deprive her of her cause of action.

Regarding the allegedly destroyed medical records, the plaintiff not only has failed to offer any evidence that records were destroyed or altered, but she also has failed to identify specifically what was allegedly altered or destroyed. The plaintiff's assertion, contained only in her brief on appeal, is grounded in mere speculation. She argues "that [medical] staff wrote [in the patient's medical record] that the patient was in critical condition, was unstable and had heart failure, pulmonary edema, a heart attack, brain injury, kidney failure, liver failure and lacked cardiac pacing. It stretches the imagination that this is not documented in a 1000 page medical record except for a brief phrase here and there." The plaintiff, however, did not identify any specific portion of the patient's medical record that was missing or altered. Both parties admit in their pleadings—the plaintiff in her request to revise her amended complaint and the defendants in their motion for summary judgment as supplemented—that the defendants provided the plaintiff with the patient's medical records. Once this was established, the defendants met their burden of establishing that they did not destroy the medical records, and it was incumbent upon the plaintiff to identify specific portions of the medical record that were missing or appeared altered.

In sum, the plaintiff failed to provide any competent summary judgment evidence that established a genuine issue of material fact regarding the defendants' bad faith in disposing of the pacer wire or the destruction or alteration of the patient's medical record. Accordingly, we conclude that the trial court properly rendered summary judgment as to the plaintiff's claim for spoliation of evidence.

The judgment is affirmed.

In this opinion WEST, J., concurred.

[1] In her complaint, the plaintiff identified Saint Francis Care, Inc., as the parent company of Saint Francis Hospital and Medical Center.

[2] The plaintiff's operative complaint consisted of six counts, including counts for negligent infliction of emotional distress and defamation. The trial court rendered summary judgment as to all six counts of her complaint. At oral argument before this court, the plaintiff stated that the trial court's determinations with respect to her claims of negligent infliction of emotional distress and defamation were not being challenged in this appeal.

[3] The plaintiff included other claims in her statement of issues, but she did not address them in her appellate brief or reply brief. "We are not required to review issues that have been improperly presented to this court through an inadequate brief." (Internal quotation marks omitted.) *Burns* v. *Quinnipiac University*, 120 Conn. App. 311, 323–24 n.12, 991 A.2d 666, cert. denied, 297 Conn. 906, 995 A.2d 634 (2010).

[4] General Statutes § 19a-127n provides in relevant part: "(a) (1) For purposes of this section, an 'adverse event' means any event that is identified on the National Quality Forum's List of Serious Reportable Events or on a list compiled by the Commissioner of Public Health and adopted as regulations . . . .

"(2) . . . (b) . . . [A] hospital or outpatient surgical facility shall report adverse events to the Department of Public Health on a form prescribed by the commissioner . . . ."

[5] Rationales for the rescue doctrine include: "(1) The rescue doctrine . . . is shorthand for the idea that rescuers are to be anticipated and is a reflection of a societal value judgment that rescuers should not be barred from bringing suit for knowingly placing themselves in danger to undertake a rescue. . . .

"(4) The rescue doctrine encourages efforts to save imperiled persons, by permitting a rescuer to recover for injuries sustained in a rescue attempt despite the rescuer's voluntary (though not reckless) decision to expose himself to danger. . . .

"(5) The rescue doctrine recognizes that those who negligently imperil life or property may be liable not only to their victims but also to the rescuers." (Citations omitted.) 65A C.J.S., supra, 47 n.1.

[6] The dissent relies on *Markley* v. *Dept. of Public Utility Control*, 301 Conn. 56, 67 n.12, 23 A.3d 668 (2011), which "assume[d], arguendo," that an equal protection claim was not abandoned on appeal, although it was not briefed, because the claim was discussed in the trial court and at oral argument on appeal. *Markley*, however, cannot be read as establishing a new rule regarding the abandonment of a claim or as overruling a long line of precedent regarding inadequate briefing. At best, *Markley* stands for the proposition that an appellate court retains discretion to consider a claim that has been inadequately briefed.

[7] We note that although the plaintiff alleged in her revised complaint that her termination violated public policy against covering up negligence, she did not cite to § 19a-127n (b) or allege that her termination violated the public policy allegedly inherent in § 19a-127n (b). The defendants, however, never filed a request to revise seeking "a more complete or particular statement of the allegations"; Practice Book § 10-35 (1); or a motion to strike contesting the legal sufficiency of the allegation. Practice Book § 10-39. Therefore, we do not address the significance, if any, of the plaintiff's failure to cite to § 19a-127n in her complaint.

[8] Both the National Quality Forum's List of Serious Reportable Events and the list compiled by the Commissioner of Public Health are available online on the website of the Department of Public Health. Both lists appear to be periodically updated.

[9] The plaintiff failed to offer any competent summary judgment evidence that the defendants failed to report the alleged adverse event at issue. The record is silent as to whether the event at issue was reported to the department.

[10] Although such a public policy may exist, because the plaintiff's general argument contains no supporting law or analysis, the precise contours of such a public policy are unknown, and may differ from case to case depending upon various factors, including, but not limited to, the particular nature of the employer's business.

[11] We recognize that the plaintiff raised a related claim of spoliation of evidence because of the allegedly improper disposal of the pacing wire. That claim, however, was made in the specific context of her allegation that the pacing wire was destroyed by medical staff in order to defeat her employment claim, rather than in an attempt to avoid liability to the patient. Second, the plaintiff offered no evidence; see part IV of this opinion; that would suggest that the pacing wire was destroyed in bad faith or that it should not have been disposed of in the same, ordinary manner as any other

medical waste.

[12] On appeal, the plaintiff also argues that the court improperly rendered summary judgment on this count because it improperly decided her count alleging wrongful termination in violation of an important public policy. The plaintiff, however, with respect to the count alleging a breach of the covenant of good faith and fair dealing, did not rely in the trial court on the public policies identified in her count alleging wrongful discharge in violation of an important public policy. Rather, in her revised complaint, the plaintiff alleged that because an implied contract existed, "[e]mployer personnel decisions are subject to a 'just cause' standard," and that "[b]y failing to perform a thorough investigation of the incident upon which the termination of the plaintiff is based, the covenant of good faith and fair dealing has been violated by the defendants." In her opposition to the motion for summary judgment, the plaintiff argued that the defendants were not entitled to summary judgment on this count because there was a genuine issue of material fact regarding the existence of an implied employment contract. Accordingly, we limit our review to only the arguments made before the trial court and decline to address the plaintiff's argument that the court improperly rendered summary judgment on this count because it improperly decided her count alleging wrongful termination in violation of an important public policy. See *Gordon* v. *Gordon*, supra, 148 Conn. App. 65 ("[w]e have consistently declined to review claims based on a ground different from that raised in the trial court" [internal quotation marks omitted]).

[13] We note that *Surrells* was decided prior to *Rizzuto*, which recognized the tort of intentional spoliation of evidence for the first time. At the time that *Surrells* was decided, the remedy for intentional spoliation of evidence "in a civil context, [was] that the trier of fact may draw an [adverse] inference from the intentional spoliation of evidence that the destroyed evidence would have been unfavorable to the party that destroyed it." (Internal quotation marks omitted.) *Rizzuto* v. *Davidson Ladders, Inc.*, supra, 280 Conn. 237. The facts and analysis in *Surrells*, however, remain relevant in light of the similar analysis employed in both cases—in *Surrells*, the issue was intentional destruction of evidence, and in *Rizzuto*, the court held that the newly recognized tort of intentional spoliation of evidence requires the intent to deprive the plaintiff of his cause of action.

[14] In her appellate brief, the plaintiff cites to and includes a copy of the defendants' "Medical Device and Product Failure Reporting Policy." The plaintiff alleges that this policy was violated by the destruction of the pacer wire, and, thus, proves that the defendants destroyed it in bad faith. The plaintiff, however, did not offer this policy as evidence with her objection to the motion for summary judgment. Accordingly, we do not consider it. See *Durkin Village Plainville, LLC* v. *Cunningham*, 97 Conn. App. 640, 656, 905 A.2d 1256 (2006) (court does not abuse discretion by refusing to consider untimely summary judgment evidence); Practice Book § 17-45 (parties must file opposing affidavits and other summary judgment evidence prior to date of motion to be heard).